Robert M. THOMPSON, Plaintiff,

v.

KINGS ENTERTAINMENT
CO., Defendant.

Civ. A. No. 86–0572–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 18, 1987.

John B. Mann, Levit & Mann, Richmond, Va., for plaintiff.

Paul M. Thompson, Robert F. Brooks, Donald L. Creach, Hunton & Williams, Richmond, Va., for defendant.

**MEMORANDUM**

RICHARD L. WILLIAMS, District Judge.

This matter comes before the Court on the defendant's motion for summary judgment. The plaintiff, Robert M. Thompson, brought the underlying action against the defendant, Kings Entertainment Co. (Kings), seeking compensatory and punitive damages arising out of the termination of his employment. Jurisdiction is premised on 28 U.S.C. § 1332. Both parties have briefed and argued the motion and the matter is now ripe for disposition.

*Background*

In 1977, Thompson became employed as a sign painter at Kings Dominion, a theme park located in Doswell, Virginia. At that time, Kings Dominion was owned by Taft Broadcasting Corporation (Taft). In 1980, Taft issued an Employees Manual (1980 Manual) to its supervisory personnel, including Thompson.[1] Among other things, the 1980 Manual defined a "dismissal" as "a separation initiated by Kings Dominion for cause."

Kings acquired the theme park from Taft in 1984.[2] Subsequently, in July, 1985, Kings issued its own Employment Handbook (1985 Handbook) to its employees. Thompson executed a statement acknowledging receipt of his copy in July, but the exact date Thompson received the document is not known. The 1985 Handbook stated, *inter alia,* that either Kings or the employee "may terminate [the] employment at any time with or without cause and with or without notice."

On August 9, 1985, shortly after issuing the 1985 Handbook, Kings discharged Thompson from his employment. One year later, Thompson filed the present lawsuit.

---

1. Although not stated by either party, it appears that Thompson had become sign painter foreman at the time the 1980 Manual was issued.

2. Whether Kings merely purchased the park or whether it purchased Taft itself is unclear from the record. In this motion, Kings does not contend that the transfer of the park's ownership altered the employment relationship existing between Thompson and Kings Dominion. Accordingly, the Court will treat the 1980 Manual as though it were attributable to Kings.

Kings subsequently filed the instant motion for summary judgment.

*Merits*

■ This diversity action is governed by Virginia law.[3] King's contention on this motion is that, based on Virginia law and the facts of this case, Thompson was an employee at-will at the time of his termination in 1985. An employee at-will can be discharged for any reason or for no reason at all. *See, e.g., Hoffman Specialty Co. v. Pelouze,* 158 Va. 586, 164 S.E. 397 (1932). Consequently, an employee at-will has no right to sue for wrongful discharge.

■ Under Virginia law, a general hiring where the term of employment is not specified is presumed to be terminable at-will. *See Hoffman Specialty Co., supra; Conrad v. Ellison-Harvey Co.,* 120 Va. 458, 91 S.E. 763 (1917). This presumption, however, may be rebutted. *See Sea-Land Service, Inc. v. O'Neal,* 224 Va. 343, 297 S.E.2d 647 (1982). It appears that prior to 1980, the duration of Thompson's employment was not fixed and, consequently, was presumptively at-will. Thompson contends in his complaint and supporting papers, however, that the issuance of the 1980 Manual, together with various representations of his employer, serve to rebut the presumption by establishing that Thompson could only be discharged for cause. Essentially, Thompson argues that his employment status was contractually altered through the issuance of the 1980 Manual.

By way of response, Kings makes two arguments which form separate grounds for summary judgment. First, Kings argues that issuance of the 1980 Manual could not alter Thompson's at-will employment status on the facts of this case. Second, Kings contends that, assuming the 1980 Manual did alter Thompson's employment status to terminable only for cause, the effect of the 1985 Handbook was to return his status to at-will.[4]

Before analyzing these arguments, it is useful to review the standard a federal court must apply in considering a motion for summary judgment. Pursuant to Fed. R.Civ.P. 56, a court is to grant such a motion only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The non-moving party, however, is entitled to the benefit of all favorable inferences and legal theories indicated by the evidence. *See United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979). Although the moving party bears the initial burden of demonstrating that the requirements of Rule 56 are met, *Celotex Corp. v. Catrett,* —— U.S. ——, ——, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), it is the party bearing the burden of proof on an issue at trial that must ultimately present evidence sufficient for the court to grant or deny a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Applying these principles to the present case, the Court determines that Kings is not entitled to summary judgment based on either of the two grounds it has raised. These grounds will be analyzed separately.

1. *The 1980 Manual*

The first issue raised by Kings' motion is whether, as a result of the issuance of the 1980 Manual, Thompson became an employee terminable only for cause. In essence, Kings contends that the provisions contained in the 1980 Manual could not become enforceable terms of Thompson's employment.

Whether policies set forth in an employment handbook or elsewhere can become enforceable terms of an employment agreement has not been considered by the Virginia Supreme Court. Many other jurisdic-

---

3. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

4. Kings also defends this action on numerous other grounds, including that Thompson was in fact terminated for cause. These other grounds were not properly raised by Kings in its motion and are not now before the Court.

tions, however, have directly addressed the matter. Of those jurisdictions, the great majority have held that such policies may be enforced as contractual provisions under certain circumstances.[5] The courts in those jurisdictions have emphasized that the employment at-will doctrine has been eroded and that fairness precludes an employer who offers alluring inducements to an employee, including job security, from summarily withholding those benefits. *See, e.g., Woolley v. Hoffmann-LaRoche, Inc.*, 99 N.J. 284, 300, 491 A.2d 1257, 1266, *modified*, 101 N.J. 10, 499 A.2d 515 (1985).

■ Although not addressed by the Virginia court, the conclusion reached in *Woolley* and other cases has been upheld by various federal district courts applying Virginia law. *See Thompson v. American Motor Inns, Inc.*, 623 F.Supp. 409 (W.D.Va. 1985); *Barger v. General Electric Co.*, 599 F.Supp. 1154 (W.D.Va.1984); *Frazier v. Colonial Williamsburg Foundation*, 574 F.Supp. 318 (E.D.Va.1983). These courts uniformly have permitted the plaintiff to proceed under a contractual theory. In *Thompson*, the court suggested that an employee could demonstrate that a handbook constitutes an offer[6] of benefits in exchange for continued labor and that assent is demonstrated by reading the handbook, understanding that the terms and conditions govern the employment, and working according to those terms and conditions. *See Thompson, supra*, 623 F.Supp. at 416–17; *see also Barger, supra*, 599 F.Supp. at 1162. To summarize, these federal courts have held that terms and policies contained in an employee handbook can become part of a binding contract.

Turning to the facts of the instant case, the Court determines that summary judgment is inappropriate. As noted, *supra*, the party bearing the burden of proof on an issue at trial also is required to produce some quantum of evidence at the summary judgment stage. *Liberty Lobby, Inc., supra*, —— U.S. —— at ——, 106 S.Ct. at 2511. Where, as here, that party is the non-movant, evidence sufficient to support a finding must be adduced to avoid entry of summary judgment. Here Thompson's evidence provides ample support for the application of this contractual theory. Specifically, a reasonable jury could find that issuance of the 1980 Manual constituted an offer of employment terms that Thompson accepted.

Evidence of the context in which the Manual was distributed permits a finding of an offer inviting acceptance. Neither Thompson nor his co-workers, it appears, had individual contracts. The 1980 Manual provided the only statement of the terms and conditions of employment. Significantly, although the Manual was to be distributed primarily to supervisory personnel, including Thompson, its terms make it clear that all employees were to be made aware of its provisions. For example, the forward stated that "it is essential that employees understand our policies if they are to be expected to obey them." Finally, the Manual specifically dealt with the manner of terminating an employee, the single most important aspect of an employment relationship. These factors all support the finding of an offer. *See supra* note 6.

As to the relevant terms of the offer embodied in the Manual, one of the sections contained therein relates solely to termi-

---

5. *Compare* cases cited in *Barger v. General Electric Co.*, 599 F.Supp. 1154, 1158 n. 3 (1984) *with* cases cited in *Barger, supra*, at 1164 n. 8; *see also* Labor Relations Expediter (BNA) 940 (1986).

6. In *Woolley, supra*, 99 N.J. at 299–300, 491 A.2d at 1265–66, a case cited with approval in Thompson, the Supreme Court of New Jersey indicated that in determining whether an employee manual constitutes an offer, the context of its preparation and distribution is the most important factor. In *Woolley*, few of the de-

fendant's employees had individual contracts. Instead, the manual provided the only terms and conditions of employment. Additionally, although the manual was designed for distribution to supervisory personnel, the Court found that, based on the manual's terms, it was intended that all employees be apprised of the benefits it conferred. Finally, the manual dealt with "the single most important objective of the workforce: job security." *Woolley, supra*, 99 N.J. at 300, 491 A.3d at 1266.

nation. The introductory paragraph of that section states that a termination results from either of two occurrences: resignation or dismissal. In a subsequent discussion of dismissals, the term is defined as "a separation initiated by Kings Dominion *for cause*" (emphasis added). From these statements, a reasonable jury could find that an employee having accepted the Manual's offer could only be discharged for cause.

Thompson also has put forth evidence sufficient for a finding that he accepted the employment terms stated in the Manual. Thompson's uncontroverted affidavit states that he was familiar with the contents of the Manual, that he understood that he could only be terminated for cause, and that he continued to work based upon this understanding.

■ Because the question of whether issuance of the 1980 Manual led to the creation of contractual rights is one for the jury, King's motion for summary judgment on this ground is not well taken. Accordingly, the Court now turns to King's second ground.

#### 2. *The 1985 Handbook*

For purposes of its second argument, Kings assumes *arguendo* that Thompson could only be terminated for cause by virtue of a contract arising out of the 1980 Manual. Kings' contention is that the issuance of the 1985 Handbook, which expressly states that employees such as Thompson are terminable-at-will, necessarily converted Thompson to an at-will employee.

Neither party has cited authority that explicitly deals with the issuance of a second employment handbook that is inconsistent with rights established in an earlier handbook. Indeed, the issue appears to be one of first impression. Kings' contention, however, has a large degree of intuitive appeal. An employer who grants rights by issuing a policy handbook, so it would seem, can retract those rights with a similar act.

After considering the matter, the Court agrees that the issuance of the 1985 Handbook could have resulted in the alteration or amendment of those employment provisions incorporated from the 1980 Manual. Contrary to Kings' position, however, the Court does not believe that any such amendments became effective automatically upon the issuance of the Handbook. Rather, the Court perceives no basis for treating the two documents differently. In other words, as with the 1980 Manual, the 1985 Handbook will be construed as an offer of employment terms which Thompson could accept or reject.

■ Analyzing the 1985 Handbook within the contractual framework described above is consonant with the public policy behind employee handbook contracts generally. In finding such contracts, courts have been receptive to the argument that employers should be bound by their expressed policies to preclude their offering "with one hand what [they] take[ ] away with the other." *Thompson, supra,* 623 F.Supp. at 417. In this case, it is assumed that the employer has bargained away its right to terminate the employee without just cause. To permit that employer to unilaterally convert the employee's status to terminable-at-will merely by issuing a second handbook to that effect would do violence to this policy. By requiring the elements of contract modification to be met, a court can ensure that the employee has assented to and received consideration[7] in exchange for the change in status.

■ Turning to the facts of this case, the Court does not find that Kings is entitled to summary judgment. A court should not grant summary judgment where a reasonable jury could find for the non-moving party. *Anderson, supra,* —— U.S. at ——,

7. The parties did not address whether the 1985 Handbook contains additional benefits for an employee sufficient to provide consideration for any alleged modification of the employment contract. Because of the disposition of the instant motion, the Court need not address the issue.

106 S.Ct. at 2511, 91 L.Ed.2d 202. To establish acceptance under the contractual analysis, Kings must demonstrate that Thompson was aware of the Handbook, that he understood that its terms governed his employment, and that he worked according to those terms. *See Thompson, supra,* 623 F.Supp. at 416–17.

The evidence fails to conclusively establish each of these elements. Most importantly, Kings has not demonstrated that Thompson worked after receiving the 1985 Handbook with the understanding that it governed his employment. In fact, Thompson's supplemental affidavit is to the contrary, indicating that it was never his understanding that the 1985 Handbook controlled his employment status.

King's position, essentially, is that acceptance is shown merely by demonstrating that Thompson continued to work with knowledge of the 1985 Handbook's terms, and in particular the at-will provision. The Court, however, rejects this contention.

As with all offers, an offer embodied in an employee policy handbook may be accepted or rejected by the offeree-employee. Under Kings' view, acceptance is inferred from an employee's continuing to work with knowledge of the handbook's terms. Accordingly, an employee seeking to reject the offer could not remain silent and continue to work. Instead, such an employee would have to give specific notice of rejection to the employer to avoid having his actions construed as acceptance.

Requiring an offeree to take affirmative steps to reject an offer, however, is inconsistent with general contract law. In the absence of special relations between the parties or other circumstances, the offeree need make no reply to the offer and his silence and inaction cannot be construed as assent. *See* 1 S. Williston, *A Treatise on the Law of Contracts* § 91 (W. Jaeger 3d ed. 1957). No such special relations or circumstances are indicated here.[8] Nor does the mere fact that the employee has continued to work constitute acceptance where, as here, the employee possessed the right to work until discharged for just cause. *Cf.* 1 S. Williston, *supra,* § 67 (where offeree performs act requested by offeror, performance does not necessarily signify assent). At most, the significance of the continued labor is ambiguous. *See* 1 S. Williston, *supra,* § 67. Therefore, the fact that Thompson continued to work after receiving the 1985 Handbook is not dispositive on the issue of acceptance of the Handbook's offer. Because Kings has provided insufficient evidence to show that Thompson understood the 1985 Handbook's terms to be controlling, it is not entitled to summary judgment based on its second ground.

*Conclusion*

The Court concludes that whether Thompson was an employee terminable at-will cannot be resolved on a motion for summary judgment on the facts of this case. Using a contractual theory, Thompson may show that, by virtue of the issuance of the 1980 Manual, he could only be discharged for cause. Similarly, Kings may use the same contractual theory to

---

8. Cases involving special relations or circumstances may be classified into four categories:

(1) Where the offeree with reasonable opportunity to reject offered goods or services takes the benefit of them under circumstances which would indicate to a reasonable man that they were offered with the expectation of compensation.

(2) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.

(3) Where because of previous dealings or otherwise, the offeree has given the offeror reason to understand that the silence or inaction was intended by the offeree as a manifestation of assent, and the offeror does so understand.

(4) Where the offeree takes or retains possession of property which has been offered to him, such taking or retention in the absence of other circumstances is an acceptance. If other circumstances indicate that the taking or retention is tortious, the offeror may nevertheless at his option treat it as an acceptance. 1 S. Williston, *supra,* § 91.

The facts as presently developed do not fall within any of these categories.

demonstrate that Thompson was terminable at-will. These are factual determinations for the jury. Accordingly, Kings' motion for summary judgment will be denied.

An appropriate order shall issue.