**Frank G. TOTH, Plaintiff,**

v.

**SQUARE D COMPANY, Defendant,**

**and 13 consolidated cases.**

Civ. A. Nos. 3:87–1998–16 to 3:87–2000–16, 3:87–2002–16 to 3:87–2007–16, 3:87–2514–16, 3:87–2515–16, and 3:87–2517–16 to 3:87–2519–16.

United States District Court,
D. South Carolina,
Columbia Division.

May 25, 1989.

Herbert W. Louthian, Jr. Columbia, S.C., for plaintiff.

G. Daniel Ellzey, Jonathan P. Pearson, Columbia, S.C., for defendant.

## ORDER

HENDERSON, District Judge.

This matter is before the Court on the defendant's motions for summary judgment in these consolidated actions pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiffs are all former salaried employees at the defendant's Columbia, South Carolina plant who have brought these actions to recover damages for wrongful discharge. Plaintiffs Robert P. Brown, Billy Threatt, George Gallo and Alexander S. McRant were discharged in January 1986. Plaintiffs Frank G. Toth, Eugene A. Snyder, Rosea Carolyn Newton, Bobby C. Branham, Alvin D. Bean, Fred A. Hilley, Mary Eames, Margaret Wells, Vera M. Roberts and Joseph A. Meritt were discharged in January 1987. All fourteen plaintiffs have alleged causes of action for breach of employment contract and outrage, also known as intentional infliction of emotional distress. In addition, plaintiffs Toth, Threatt, Snyder, Newton, Branham, Bean, Hilley, Gallo and Eames have asserted causes of action for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* The defendant moves for summary judgment on all of the causes of action in each complaint. For the reasons set forth below, the Court grants the defendant's motion on the causes of action for outrage and violation of the ADEA and denies the motion on the causes of action for breach of contract. In reaching this decision, the Court considers the three causes of action separately.

### I.

First, the Court considers the defendant's motions insofar as they seek summary judgment on the causes of action for breach of employment contract. The plaintiffs, relying on *Small v. Springs Indus.*, 292 S.C. 481, 357 S.E.2d 452 (1987), contend their lay-offs breached their contractual rights secured by an employment handbook distributed by the defendant to its employees. Under South Carolina law, in the absence of a contractual or statutory limitation, an employer may terminate an employee at his pleasure and without cause and such a termination will not give rise to a cause of action by the employee. *Sams v. Brotherhood of Ry. & S.S. Clerks*, 166 F.Supp. 49, 53–54 (D.S.C.1956); *see also Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 276 S.C. 284, 289, 278 S.E.2d 607, 609 (1981); *Ross v. Life Ins. Co. of Va.*, 273 S.C. 764, 765, 259 S.E.2d 814, 815 (1979). In *Small*, however, the South Carolina Supreme Court affirmed a jury verdict in favor of an employee who alleged he was discharged without receiving benefit of a four-step disciplinary process set out in an employment handbook and bulletin. The *Small* court stated: "We hold that a jury can consider an employee handbook, along with other evidence, in deciding whether the employer and employee had a limiting agreement on the employee's at-will employment status." 292 S.C. at 486, 357 S.E.2d at 455. The plaintiffs here assert that under their employment handbook the defendant was required to lay-off employees in reverse order of seniority and that the failure to do so constituted a breach of their employment agreements. The defendant has moved for summary judgment on the contract causes of action on the grounds that (1) employment handbooks cannot be used to establish breach of employment contracts occurring before the decision in *Small;* (2) any contractual rights the employees enjoyed under the handbook terminated when the defendant issued a revised handbook on July 1, 1986; and (3) even if there was a contract, the evidence in the record establishes that it was not breached as to certain of the plaintiffs. The Court rejects all three of the defendant's grounds and denies its motions as they relate to the contract causes of action.

### A.

First, the defendant asserts that because the decision in *Small* created a new contractual right for employees, its holding cannot be applied retroactively to permit employees discharged before the *Small* de-

cision was issued to rely on handbooks as evidence of employment rights. Since the defendant filed these motions, the South Carolina Supreme Court, upon certification from this Court, resolved the issue of retrospective application in *Toth· v. Square D,* —— S.C. ——, 377 S.E.2d 584 (1989). The Supreme Court stated in *Toth:* "[W]e explicitly hold that *Small* is to be retroactively applied to causes of action arising prior to the date it was filed." *Id.* at ——, 377 S.E.2d at 586. In light of this holding, the Court rejects the defendant's first ground for summary judgment on the contract causes of action.

### B.

■ As a second ground, the defendant argues it is entitled to summary judgment on the breach of contract causes of action asserted by those plaintiffs discharged after July 1, 1986,[1] when the defendant issued a revised handbook. The defendant also seeks partial summary judgment on the contract causes of action asserted by those plaintiffs laid off before that date,[2] asserting that those plaintiffs are not entitled to recover for any damages incurred after the handbook was revised. The revised handbook on which the defendant relies contains no lay-off provisions and, in addition, sets out the following disclaimer: "This booklet is not intended to create any contractual rights in favor of the employee or Company. The Company reserves the right to change the terms of this booklet at any time." Salaried Employee Handbook at 2 (Revised July 1986). All ten of the plaintiffs laid off after July 1, 1986, admit that they received the revised handbook and signed the following acknowledgement: "This will acknowledge receipt of Square D's Employee Handbook as revised on July 1, 1986. I recognize it is my responsibility to read the handbook and understand the policies and procedures set forth in it."[3] *Id.* at 16; Deposition of Frank G. Toth at 42 (September 15, 1987); Deposition of Eugene Snyder at 149 (September 14, 1987); Deposition of Rosea Carolyn Newton at 35 (September 25, 1987); Deposition of Bobby Branham at 34–35 (September 17, 1987); Deposition of Alvin Douglas Bean at 32 (September 17, 1987); Deposition of Fred A. Hilley at 53–54 (September 18, 1987); Deposition of Mary Eames at 31–32 (October 13, 1987); Deposition of Margaret Wells at 36 (October 7, 1987); Deposition of Vera Roberts at 40 (October 20, 1987); Deposition of Joseph Andrew Meritt at 32–33 (October 20, 1987). The defendant asserts that any contract which may have existed under the earlier handbook limiting the defendant's right to lay off employees at will terminated when the revised handbook was issued. Thus, the defendant argues, those employees laid off after July 1, 1986, have no cause of action for breach of contract and those laid off before that date may recover only those damages suffered before the revised handbook was issued. The Court rejects the defendant's argument as to both classes of employees.

The South Carolina Supreme Court based its decision in *Small* on principles of equity and fairness:

> Once [the defendant employer] voluntarily chose to publish the handbook and bulletin and orally assure the employees that the provisions of those publications would be followed, there were "strong equitable and social policy reasons militating against allowing the employers to promulgate for their employees potentially misleading personnel manuals while reserving the right to deviate from them at their own caprice." *Walker v. Westinghouse Electric Corporation,* 77 N.C. App. 253, 259, 335 S.E.2d 79, 83 (1985). "Having announced the policy, presumably with a view to obtaining the benefit of improved quality of the work force, the employer may not treat its promise

---

**1.** These are plaintiffs Toth, Snyder, Newton, Branham, Bean, Hilley, Eames, Wells, Roberts and Meritt.

**2.** These are plaintiffs Brown, Threatt, Gallo and McRant.

**3.** All of the plaintiffs laid off after July 1, 1986, except Branham and Roberts, also admit that they read the revised handbook.

as illusory." *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 619, 292 N.W.2d 880, 895 (1980). * * * It is patently unjust to allow an employer to couch a handbook, bulletin, or other similar material in mandatory terms and then allow him to ignore these very policies as "a gratuitous nonbinding statement of general policy" whenever it works to his disadvantage. * * * If company policies are not worth the paper on which they are printed, then it would be better not to mislead employees by distributing them. Due to the potential for gross inequality in a situation such as the one in the case at bar, a majority of states has determined that a handbook can alter the employment status. See Annot., 33 A.L.R. 4th 120 (1984). South Carolina, as a progressive state which wishes to see that both employer and employee are treated fairly, now joins those states.

*Id.* 292 S.C. at 485–86, 357 S.E.2d at 454–55. The principles set forth in *Small* require that the Court reject the ground raised here by the defendant. If an employer were permitted to extinguish an employee's rights under an existing handbook through the simple expedient of a revised handbook, employees could suffer the very inequities the *Small* court sought to prevent. An employer could ignore his own mandatory policies and his handbook, as the *Small* Court observed, would not be worth the paper on which it is printed.

■ Permitting unilateral modification of an employment contract through handbook revision would also run contrary to established principles of contract formation. The essential elements of any contract are mutual assent to be bound, usually demonstrated by offer and acceptance, and exchange of valuable consideration. *See Pierce v. Northwestern Mut. Life Ins.*

*Co.,* 444 F.Supp. 1098, 1106 (D.S.C.1978); *Baylor v. Bath,* 189 S.C. 269, 270, 1 S.E.2d 139, 140 (1939); *McPeters v. Yeargin Constr. Co.,* 290 S.C. 327, 331, 350 S.E.2d 208, 210–11 (Ct.App.1986). Although an employment contract such as the one alleged here is, as the *Small* court observed, a unilateral agreement,[4] it nonetheless requires mutual assent and consideration.[5] 1 *Corbin on Contracts* § 21, at 54. In a unilateral employment agreement, the employer makes an offer or promise to hire in return for specified benefits and wages and the employee accepts the offer by performing the act on which the promise is impliedly or expressly based; the employee's act or forbearance in reliance on the employer's promise furnishes consideration to the employer, while the benefits conferred under the terms of the promise constitute consideration for the employee. *Small* 292 S.C. at 484, 357 S.E.2d at 454. Once the contract has been created, the employer is legally bound by the terms of its promise which are enforceable by the employee. *Id.,* 357 S.E.2d at 454.

■ Viewed most favorably to the plaintiffs, the facts establish that the defendant was contractually bound under the first handbook to lay off employees according to the handbook's provisions and the plaintiffs enjoyed a contractual right not to be laid off except in accordance with those provisions. Thus, the defendant is entitled to summary judgment here only if it can demonstrate that the parties' contractual rights and duties were altered by a modification which satisfies all the requirements of a valid contract.[6] *Bishop Realty & Rentals, Inc. v. Perk, Inc.,* 292 S.C. 182, 185, 355 S.E.2d 298, 300–01 (Ct.App.), *cert. denied,* 293 S.C. 538, 362 S.E.2d 26 (1987). The defendant must therefore show that the plaintiffs assented to modify the alleged

---

4. *Small,* 292 S.C. at 484, 357 S.E.2d at 454.

5. A unilateral contract differs from a bilateral contract in that the former involves no mutuality of obligation; there is only one promisor and one promisee for whom the contract creates a legally enforceable right. 1 *Corbin on Contracts* § 21 (1963); *McMahan v. McMahon,* 122 S.C. 336, 340, 115 S.E. 293, 294 (1922).

6. No consideration is required, however, to modify a contract for the sale of goods governed by article two of the Uniform Commercial Code. Section 36–2–209(1), Code of Laws of South Carolina, 1976.

contract to reflect the terms of the revised handbook and that they received sufficient consideration to support that modification. The Court concludes the defendant has failed to meet its burden on summary judgment of showing an absence of any genuine issue of fact concerning either of these elements.

While the defendant has established the existence of a new offer, embodying the terms of the revised handbook, it has not established as a matter of law that the plaintiffs accepted that offer. Whether the plaintiffs accepted the terms of the revised handbook by continuing to work for the defendant after receiving, and in some cases actually reading, that handbook is a question of fact for the jury to decide. *See Thompson v. Kings Entertainment Co.,* 674 F.Supp. 1194, 1198–99 (E.D.Va.1987); *Preston v. Claridge Hotel & Casino, Ltd.,* 231 N.J.Super. 81, 555 A.2d 12 (1989); *cf. Small, supra* (it is for jury to decide whether employer and employee entered employment contract according to terms of handbook, bulletin and oral assurances). Further, the defendant has not designated to the Court any new consideration the plaintiffs received in return for the modification.[7] Consequently, the Court declines to grant summary judgment on the contract causes of action asserted by the ten plaintiffs laid off in January 1987, on the basis of the revised handbook.

For similar reasons, the Court likewise finds partial summary judgment is inappropriate on the contract causes of action asserted by the four plaintiffs laid off in January 1986. Under the Court's reasoning above and viewing the facts in their favor, the Court concludes these plaintiffs had a contractual right in January 1986 to be laid off only in compliance with the first handbook's provisions. If, as the Court has already held, mere revision of the handbook could not terminate that right, it likewise could not limit the damages recoverable on account of a breach of that right.

For these reasons, the Court denies the defendant's motions for summary judgment insofar as they rely on the revised handbook.

### C.

■ Third, the defendant asserts that, even if the plaintiffs had a contractual right to be laid off only in accordance with the criteria set forth in the first handbook, the record establishes as a matter of law that the defendant did not violate that right by laying off plaintiffs Brown, Threatt, Gallo and McRant.

The original handbook contained the following lay-off provision:

Business conditions can change to such an extent that we will not have sufficient work to keep all employees gainfully employed. Should this situation occur, the total work force will have to be reduced by laying off the number of employees over and above those needed to maintain production schedules. Since it is necessary to retain qualified employees to do the available work, layoffs will be determined by considering qualifications and service credits with the Company. This means that normally the employee with the least amount of service credits will be the first to be laid off, and those employees with the greater amount of service credit and the necessary qualifications will be retained to do the available work. Employees laid off will be recalled to work in a reverse order. Those employees who are qualified to do the available work and who have the greatest service credit will be called back to work first. Service credit will continue to accumulate for an employee while on layoff, up to a period of one year or a period equal to your service credit at the time of layoff whichever is less.

Employee Handbook for Salaried Employees at 9. The handbook described "service credit" as follows:

Service Credit is your length of service as an employee of the Columbia Plan of

**7.** In fact, Arthur F. Drant, III, Human Resources Manager at the defendant's Columbia plant, testified at deposition that the plaintiffs received no additional consideration under the revised handbook. Deposition of Arthur F. Drant, III, at 200.

the Square D Company. We recognize an employee's length of service as part of personal security, and, as long as qualifications are satisfactory, service credit will be used as described in this section. Service credit will be used to determine eligibility for vacation benefits. It will also be a factor in the event of transfer, layoff, promotion and shift preference.

*Id.* at 8. The defendant contends that under these provisions, it was required to consider seniority in lay-off decisions, if at all, only in the case of employees with proper qualifications. The defendant further contends that plaintiffs Brown, Threatt, Gallo and McRant were not so qualified, as demonstrated by their unsatisfactory scores in company performance appraisals.[8] For the following reasons, the Court finds the defendant has failed to establish that these plaintiffs lacked the necessary qualifications to claim benefit of the handbook provisions.

The defendant has submitted completed appraisal forms for the four affected plaintiffs but has not designated any evidence showing what constitutes a "satisfactory" appraisal score.[9] Its characterization of certain scores in its memoranda as either satisfactory or unsatisfactory, without citation to evidence in the record, is insufficient to satisfy its burden on this issue.[10] In addition, at the time of the lay-offs, each of these plaintiffs had been employed by the defendant for thirteen to fourteen years and had not been discharged for lack of qualifications or even been counseled or

disciplined in accordance with the defendant's detailed and mandatory procedures. *See* Plaintiff's Exh. D. The defendant's failure to take such corrective action over so long a period raises an inference that these plaintiffs were qualified.

For these reasons, the Court concludes that whether plaintiffs Brown, Gallo, Threatt and McRant possessed the qualifications contemplated under the handbook provisions is a disputed question of fact which cannot be resolved on this motion. Accordingly, the Court declines to hold that the defendant did not breach the contractual rights of these four plaintiffs when it laid them off in 1986.

## II.

Next, the defendant moves for summary judgment on the plaintiffs' causes of action for outrage. In order to recover for outrage, a plaintiff must establish each of four elements: (1) that the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from its conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiffs' emotional distress; and (4) the emotional distress suffered by the plaintiffs was so severe that no reasonable man could be expected to endure it. *Ford v. Hutson,* 276 S.C. 157, 162, 276 S.E.2d 776,

---

**8.** The defendant also argues it was entitled to discount seniority in laying off these plaintiffs because they were less qualified than other employees. The handbook provisions on which the plaintiffs rely, however, make no mention of comparative qualifications but indicate that employees who have the "necessary qualifications" and whose "qualifications are satisfactory" will be laid off or retained according to the amount of their service credits. The fact that other employees may have performed better than the plaintiffs does not establish that the latter did not have satisfactory qualifications or the necessary qualifications to perform their jobs.

**9.** Nor is the Court able to determine from the face of the completed appraisal forms what constitutes a "satisfactory" score. In fact, the de-

fendant admits it has changed the criteria for a satisfactory score since it began the appraisals.

**10.** In fact, it is not clear that the defendant would characterize any of the most recent appraisals of these four plaintiffs as "unsatisfactory." The defendant concedes that plaintiff Brown received a satisfactory score. Defendant's Memorandum (C.A. No. 87–2519) at 5. It is unclear whether the defendant considers the final appraisal scores for plaintiffs Gallo and McRant satisfactory. *See* Defendant's Memorandum (C.A. No. 87–2003) at 5; Defendant's Memorandum (C.A. No. 87–2007) at 5. The defendant describes plaintiff Threat's final appraisal score as "less than clearly satisfactory." Defendant's Memorandum (C.A. No. 87–1999) at 6.

778–79 (1981) (quoting *Vicnire v. Ford Motor Co.*, 401 A.2d 148 (Me.1979)). The defendant asserts it is entitled to summary judgment on the claims for outrage because, among other reasons, the plaintiffs have not alleged and cannot prove any outrageous conduct by the defendant. The Court agrees and grants the defendant's motions insofar as they seek summary judgment on the second causes of action.[11]

■ The conduct cited by the plaintiffs as outrageous is "[t]he conduct of the defendant in discharging these employees with no notice and escorting them from the plant in the presence of their peers when they had dedicated most of their adult lives to the company, without regard to the emotional well-being of these employees." Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment at 26. The Court finds this conduct insufficiently outrageous to support a cause of action for outrage.

■ Not all conduct involving personal interaction and causing emotional distress in a business setting may serve as a basis for an action alleging outrage. *Butts v. AVX Corp.*, 292 S.C. 256, 263, 355 S.E.2d 876, 880 (Ct.App.1987). In fact, it is established under South Carolina law that wrongful discharge of an employee, no matter how unfair or reprehensible, does not by itself constitute behavior so extreme and outrageous as to support a claim for outrage. *See Corder v. Champion Road Mach. Int'l Corp.*, 283 S.C. 520, 324 S.E.2d 79 (Ct.App.1984); *Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 283 S.C. 155, 321 S.E.2d 602 (Ct.App.1984), *rev'd on other grounds*, 287 S.C. 190, 336 S.E.2d 472 (1985). Because the plaintiffs have not demonstrated any extreme or outrageous behavior on the defendant's part, the Court grants the defendant's motion for summary judgment on the outrage causes of action.

### III.

Finally, the defendant moves for summary judgment on the claims for violation of the ADEA asserted by plaintiffs Toth, Threatt, Snyder, Newton, Branham, Bean, Hilley, Gallo and Eames (referred to collectively as "ADEA plaintiffs"). For the following reasons, the Court grants the defendant's motion on these claims.

■ In order to establish an ADEA violation, a plaintiff must prove by a preponderance of the evidence that "but for" the defendant's motive to discriminate against an older employee he would not have been terminated. *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1051 (4th Cir. 1987); *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1432 (4th Cir.1985). A plaintiff may meet this burden in either of two ways: (1) under ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue or (2) by satisfying the judicially created scheme for proving an ADEA violation. *English*, 828 F.2d at 1051; *Wilhelm*, 773 F.2d at 1432; *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 239–41 (4th Cir.1982). Under the judicially created scheme of proof, a plaintiff in the usual ADEA case can establish a *prima facie* case by showing each of the following: (1) that he is a member of the protected age group (between forty and seventy years of age); (2) that he was discharged or demoted; (3) that at the time of discharge or demotion, he was performing his job at a level that met his employer's legitimate expectations and (4) that following his discharge or demotion, he was replaced by someone of comparable qualifications outside the class. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 849 (4th Cir.1988); *Lovelace v. Sherwin–Williams Co.*, 681 F.2d at 239. Where, as here, a plaintiff is laid off as part of a work force reduction, the fourth element is modified to require that the plaintiff show that persons outside the protected age group were retained in the same or similar position or that there is some other evidence that the employer did not treat age neutrally in deciding to lay off the plaintiff. *Herold v. Hajoca Corp.*, 864 F.2d 317, 319 (4th Cir.

---

**11.** Because the Court grants the motions for failure to present evidence of outrageous conduct, it need not rule on the alternative grounds set forth in the defendant's memoranda.

1988), *reh'g and reh'g in banc denied* (1989); *EEOC v. Western Elec. Co.,* 713 F.2d 1011, 1014–15 (4th Cir.1983). Once a plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to articulate a nondiscriminatory reason for his treatment of the plaintiff. If the defendant succeeds in this, the burden shifts again to the plaintiff to prove he was the victim of intentional discrimination. He can meet this burden by showing that the defendant's proffered reason is a mere pretext and that the plaintiff's age is the more likely reason for the discharge. *Herold v. Hajoca Corp.,* 864 F.2d at 319.

The defendant asserts the ADEA plaintiffs have failed to satisfy the fourth element of their *prima facie* cases because they have produced no evidence that employees outside the protected class were retained in the same or similar positions held by the ADEA plaintiffs nor any other evidence of discriminatory motive. Alternatively, the defendant contends that even if the ADEA plaintiffs have made out *prima facie* cases of age discrimination, the defendant is nevertheless entitled to summary judgment because it has met its burden of articulating legitimate reasons for the lay-offs. The Court agrees with the defendant's alternative position.

The ADEA plaintiffs have arguably satisfied the fourth element of the *prima facie* case by producing records which show the ages and job classifications of all employees retained after the lay-offs or subsequently hired through March 1988.[12] *See* Plaintiffs' Exhs. C, G. A comparison of these records with the ADEA plaintiffs' personnel records, Plaintiffs' Exh. A, suggests that employees under forty were retained after the lay-offs or subsequently hired in positions which the ADEA plaintiffs could have held. *See Herold,* 864 F.2d at 320. Assuming that this evidence is sufficient to establish each plaintiff's *prima facie* ADEA case, the Court nevertheless finds the defendant is entitled to summary judgment on the ADEA claims because it has articulated legitimate, nondiscriminatory reasons for selecting the ADEA plaintiffs for lay-off and the latter have not shown that those reasons are pretextual.

It is undisputed that the 1986 and 1987 lay-offs were undertaken as part of a corporate reorganization to lower costs. During that reorganization certain supervisory employees were instructed to reduce the number of salaried employees under their authority. The affidavits of these employees reveal that they determined that the ADEA plaintiffs, among others, should be laid off for the following reasons: (1) the performance of plaintiffs Toth and Branham was inferior to others in the same area and their jobs could more easily be eliminated without serious disruption, Affidavit of John E. Menkhaus; (2) plaintiff Threatt had the lowest supervisory performance rating in the factory, Affidavit of John E. Menkhaus; (3) plaintiff Snyder was selected because of performance problems, technical limitations and because he was less proficient in certain areas than another employee in his section, Affidavit of Charles L. Kuckuck; (4) plaintiff Newton's per-

12. The ADEA plaintiffs have offered other evidence which the Court finds insufficient to establish the fourth element of the *prima facie* case. First, they cite a speech, delivered to the defendant's employees by E.G. Adams, which warns that the defendant company must not become obsolete like a dinosaur. The speech makes no direct connection between older employees and dinosaurs, and the Court finds no reasonable inference from the language of the speech that such a connection was intended. *See* Plaintiffs' Exh. F. Second, the ADEA plaintiffs cite statistical evidence purporting to show that the 1987 lay-offs had a greater impact on employees over forty than under forty. As the ADEA plaintiffs themselves contend, *see* Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment at 30–31, all the lay-offs from January 1986 through January 1987 were part of a single restructuring strategy. Thus, in order to demonstrate discrimination, the ADEA plaintiffs must show a disparate percentage of employees over forty were laid off during that entire period, not only during the January 1987 phase. An examination of the record, however, reveals that the percentage of employees over forty was actually higher after the lay-offs than before. According to the Court's calculations, before the 1986 lay-offs, 138, or 38.87%, of the defendant's 355 employees were over forty, while after the 1987 lay-offs, 127, or 41.5%, of its 306 employees were over forty. *See* Defendant's Answers to Plaintiffs' First Set of Interrogatories.

formance was substantially inferior to the performance of the three other technicians in her department, Affidavit of Dwight D. Morgan; (5) plaintiff Bean could not get along with other managers and was very defensive when criticized, Affidavit of John E. Menkhaus; (6) plaintiff Hilley's duties had decreased in recent years because of "changes in manufacturing philosophies" and his remaining duties could easily be divided among other employees, Affidavit of Charles Bauer; (7) plaintiff Gallo "was selected for layoff due to his poor job performance in comparison with other factory supervisors," Affidavit of John E. Menkhaus; and (8) plaintiff Eames's performance was inferior to that of the other four clerks in her department, Affidavit of William H. Rider. Because the ADEA plaintiffs have not produced any evidence that these legitimate reasons for the ADEA plaintiffs' lay-offs are merely pretextual, the Court concludes summary judgment for the defendant is appropriate on the causes of action for violation of the ADEA.[13]

For the foregoing reasons, the Court grants the defendant's motion for summary judgment on the claims for outrage in all of these consolidated cases and on the claims for violation of the ADEA in C.A. Nos. 87–1998, 87–1999, 87–2000, 87–2002, 87–2004–16, 87–2005, 87–2006, 87–2007 and 87–2515. The Court denies the defendant's motion insofar as it seeks summary judgment on any of the plaintiffs' claims for breach of an employment contract.

IT IS SO ORDERED.

---

**13.** The Court's conclusion that the defendant has succeeded in rebutting a *prima facie* case of age discrimination is not inconsistent with its earlier holding that the defendant failed to establish as a matter of law that the plaintiffs did not possess the requisite qualifications to enjoy the protection of the handbook provisions. *See supra* Part I(C). The fact that the ADEA plaintiffs were less qualified than others in their departments or that their jobs could more easily be eliminated than others' is a legitimate non-discriminatory reason for laying them off. Those facts, however, do not render them "unqualified" under the handbook provisions which make no mention of comparative qualifications. *See supra* note 7.