### Herbert D. McBRIDE, Plaintiff,

v.

### CITY OF ROANOKE REDEVELOPMENT AND HOUSING AUTHORITY

and

### Robert W. Glenn, Jr., individually and in his official capacity as Chairman of the City of Roanoke Redevelopment and Housing Authority, Defendants.

#### Civ. A. No. 93–0349–R.

United States District Court, W.D. Virginia, Roanoke Division.

Dec. 21, 1994.

---

James B. Thorsen, Thorsen, Page & Merchant, Richmond, VA, for plaintiff.

David A. Clark, Woods, Rogers & Hazlegrove, Roanoke, VA, for defendants.

## MEMORANDUM OPINION

TURK, District Judge.

This case is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Upon careful consideration of the record, the applicable law, the briefs submitted by the parties, and the arguments presented by counsel at the hearing, the court finds that it must grant the motion for summary judgment.

## I. BACKGROUND

Plaintiff McBride's claims against defendants City of Roanoke Redevelopment and Housing Authority ("Authority") and Robert W. Glenn, Jr. ("Glenn") derive from the events leading up to plaintiff's termination as Executive Director of the Authority in May, 1992. McBride's termination followed a twenty-eight year career with the Authority, a subdivision of the Commonwealth of Virginia that provides housing to low income individuals. Plaintiff had served as Executive Director since 1981.

As Executive Director, McBride reported to the Board of Commissioners ("Board"), which bore the ultimate responsibility for running the Authority. In February, 1991, Glenn, a member of the Board since 1988, assumed the position of Chairman of the Board.[1] On March 9, 1992, McBride intro-

1. The complaints about McBride's job performance that led to his termination surfaced sometime in 1991. The facts giving rise to the Board's dissatisfaction with McBride's perfor-

duced a resolution approving an amended personnel policy for the authority, effective March 10, 1992. On March 27, 1992, McBride acknowledged receipt of the new personnel manual and signed it. The manual provided, among other things, for at will employment.

Subsequently, on May 2, 1992, a majority of the Board voted to terminate plaintiff's employment. Glenn and Vice–Chairman Crawford met privately with McBride to advise him of the Board's decision and to give him the opportunity to resign with severance pay. After McBride refused the offer, the Board issued a statement in a public session announcing the decision.

Among McBride's claims are that defendants defamed him by way of allegations of fraud and that defendants terminated him in response to quotations attributed to him in the newspaper. It is undisputed that the Board never accused McBride of any improprieties. Indeed, the Board publicly stated that he was not terminated for such reasons. Nevertheless, in 1991 the Board did investigate allegations of fraud. It dismissed the allegations on October 28, 1991.

In 1990, the Board articulated to McBride the importance of public relations to his role as Executive Director and urged him to develop a public relations plan. Subsequently, in October, 1990, an article discussing residents' complaints of conditions in an Authority property appeared in the *Roanoke Times*. In response to a reporter's question about a woman's concern that the ceiling of her house might fall on her, McBride responded that "[the ceiling] is only drywall, there is nothing that has any weight to it." On July 14, 1991, a *Roanoke Times* article on poverty began by quoting McBride:

> If you have to be poor, Herb McBride says, Roanoke is a great place. "You can find a job, a place where you will be treated decently. There is excellent public

housing and very good social services." McBride has heard that from lots of poor people in the ten years he has run the City's public housing program. "They can always get something to eat," he says. "They can go to the Salvation Army. They can go to the Soup Kitchen. They can go to the dumpsters—you might have to take one-half of the banana and throw it away, but you can eat the other half." Welcome to Roanoke, an All American City.

Plaintiff has sued defendants for (1) deprivation of property and liberty interests without due process of law, (2) breach of contract, (3) defamation, and (4) violation of his First Amendment right to free speech. The court held a hearing on defendants' motion on December 8, 1994; therefore, the matter is now ripe for the court's consideration.

## II. ANALYSIS

Jurisdiction of the court is proper pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343. The court exercises supplemental jurisdiction over the state law defamation claim pursuant to 28 U.S.C. § 1367.

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper where "there is no genuine issue as to any material fact." In this case, defendants "bear[ ] the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)), *cert. denied*, 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992). If defendants carry this burden, "[t]he burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson v. Liberty*

mance are in dispute. Plaintiff contends that Glenn began waging a campaign to oust McBride as soon as he accepted the chairmanship. According to defendants, the Board's disappointment with McBride's performance had started much earlier. Defendants point to a letter to the Board from Jack Kemp, then Secretary of the United States Department of Housing and

Urban Development, regarding the accountability of Board members for their failure to act. They argue that this letter prompted their discontent with McBride to emerge in a more concrete form. The court merely notes that the resolution of this factual issue is irrelevant to the legal analysis set forth below.

*Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)).

### A. Due Process and Breach of Contract Claims

McBride argues that his discharge deprived him of protected property and liberty interests in violation of his right to procedural due process under the Fourteenth Amendment. As a threshold matter, plaintiff must establish that he has suffered a " 'deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.' " *Jenkins v. Weatherholtz*, 909 F.2d 105, 107 (4th Cir.1990) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972)). The court concludes that McBride's termination deprived him of neither.

### 1. Property Deprivation and Breach of Contract Claims

In order for plaintiff to possess a property interest in continued employment, "state law rules and understandings must provide a 'sufficient expectancy of continued employment.' " *Jenkins*, 909 F.2d at 107 (citing *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976)). Thus, if, as defendants contend, plaintiff's employment was at will, his termination did not deprive him of a protected property right. *See Jenkins*, 909 F.2d at 107 (stating that "[a] local government employee serving 'at the will and pleasure' of the government employer has no legitimate expectancy of continued employment and thus has no protectible property interest"); *Skeeter v. City of Norfolk*, 681 F.Supp. 1149, 1155 (E.D.Va. 1987) (stating that "[u]nder Virginia law, 'at will' employment creates no property interest"), *aff'd*, 898 F.2d 147 (4th Cir.1990).

In arguing that plaintiff's relationship with the Authority was one of at will employment, defendants rely chiefly on the personnel policy manual, effective March 10, 1992. The preface to the personnel manual states that the procedures set forth in the manual "do not create any employment contract or term," that "the right of the employee or the Authority to terminate the employment relationship 'at will' is recognized and affirmed as a condition of employment," and that the

at will employment "does not represent a departure from longstanding Housing Authority policy." In addition, on March 27, 1992 McBride signed an "Employee Certification" with respect to the manual stating, in pertinent part, as follows:

> I acknowledge receipt of this Personnel Policy manual and agree that it supersedes and replaces all prior Personnel Policy manuals....
>
> I understand that my employment is mutually terminable at will, with or without notice or stated reason and that these policies do not constitute an employment contract for any specific duration.

McBride argues that the March, 1992 personnel manual was an attempt to supersede the existing practice, custom, or policy of the Authority with respect to the status of its employees. The evidence as to the Authority's policy before the issuance of the March, 1992 manual is conflicting. The court will assume, for the purposes of this motion, that, as McBride contends, the Authority's policy prior to the March, 1992 manual was one of termination only for cause.

McBride's first contention is that the new manual and his acknowledgment thereof were invalid for failure to satisfy the requisites of contract modification. In support of his argument, McBride relies on *Thompson v. Kings Entertainment Co.*, 653 F.Supp. 871, 875 (E.D.Va.1987). In *Thompson*, the court faced the question whether the issuance of a policy statement providing for at will employment necessarily superseded any existing contract right in employment. 653 F.Supp. at 875. The court held that the terms of the subsequent policy statement would govern only if the elements of contract modification had been met. *Id.* (denying the defendant's motion for summary judgment on the grounds that it had not established the element of acceptance under the contractual analysis). The court there did not reach the issue of sufficiency of consideration, but it implied in dicta that a valid modification might necessitate some additional benefits. *Id.* at 875 n. 7.

The Virginia Supreme Court addressed the adequacy of consideration in a case with facts

similar to those in the present matter. In *Progress Printing Co. v. Nichols*, 244 Va. 337, 421 S.E.2d 428, 430 (1992), the court considered whether an acknowledgment form providing for at will employment superseded an employee handbook containing a termination for cause provision. The acknowledgement in *Progress Printing* stated that "[t]he employment relationship between Progress Printing and the employee is *at will and may be terminated by either party at any time.*" *Id.* (emphasis original). The court held that the acknowledgment governed the terms of employment:

> [T]here was an offer of employment at will, allowing either side to terminate the relationship at any time; *the employee continued service, which constituted the consideration;* and the employee accepted by performance. '[S]uch a promise amounts to an offer, which, if accepted by performance of the service fulfills the legal requirements of a contract.'

*Id.* 421 S.E.2d at 431 (emphasis added) (quoting *Hercules Powder Co. v. Brookfield,* 189 Va. 531, 53 S.E.2d 804, 808 (1949)).

The court finds that McBride's acknowledgment satisfied the contractual requisites as set forth in *Progress Printing.* Clearly McBride understood and was aware that by signing the acknowledgment he was accepting an offer of at will employment. Not only did he sign the acknowledgment directly below the pertinent language, but he himself introduced the resolution approving the amended personnel policy. He both signed the acknowledgement and continued service. To the extent that the *Thompson* court suggests that continued service is inadequate consideration, the court cannot reconcile it with the holding of the Virginia Supreme Court in *Progress Printing.* Therefore, the court holds that McBride's employment with the Authority was terminable at will.

 Nor does plaintiff's argument that he was deprived of the state grievance procedure persuade the court. As a threshold matter, the court notes that McBride cannot claim that the Authority deprived him of grievance rights under its own personnel policy manual, since he never attempted to invoke them. McBride claims, however, that the Authority's grievance procedure was ineffective, since there is no evidence that the Authority ever submitted it to the Director of the Department of Employee Relations Counselors for approval. *See* Va.Code Ann. § 2.1–114.5:1(C)(2)(e) (Supp.1994) (requiring such a submission).

The Virginia Code provides that "[t]he state grievance procedure shall apply if a housing authority does not promulgate an approved grievance procedure." Va.Code Ann. § 2.1–114.5:1(C)(2)(d). Assuming, for the purposes of this motion, that the Authority's grievance procedure never was approved, plaintiff's argument fails nonetheless. First, as stated above, the court questions whether plaintiff may complain that the Authority deprived him of the state grievance procedure when he never attempted to invoke it. More importantly, the state grievance procedure provides an exception for "[a]gency heads or chief executive officers of government operations ... appointed by boards and commissions." Va.Code Ann. § 2.1–114.5:1(C)(1)(b). Defendants have presented unrefuted evidence sufficient to establish that McBride's position at the Authority was that of agency head or chief executive employee as contemplated under the Virginia Code. Therefore, plaintiff had no property right in the state grievance procedure.

The court holds that neither the Authority's termination of McBride nor the absence of any grievance procedure following his termination deprived him of a protected property interest. Thus, his due process claims with respect to property deprivation must fail. Moreover, since McBride's employment was at will, his claim for breach of contract also must fail. Accordingly, the court grants summary judgment as to Counts I (property deprivation claim) and IV of the complaint.

### 2. Liberty Deprivation Claim

 McBride claims that the circumstances under which the Authority terminated him imposed a stigma sufficient to deprive him of liberty interests. *See Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Specifically, McBride complains of the public statement the Board issued upon his termination:

The Board appreciates the contributions of Mr. McBride and takes this action with regret. The decision is in the best interests of the Authority, the people it serves, and the citizens of Roanoke, and is based on an unsatisfactory job performance. There is no suggestion of unlawful conduct or other impropriety. The Board's decision is based on the lack of compatibility between Mr. McBride and the manner in which the Board desires the Authority to be operated.

In *Bristol Virginia School Board v. Quarles*, the court held that public termination for "ineffective leadership" and "lack of communication with personnel" did not implicate protected liberty interests. 235 Va. 108, 366 S.E.2d 82, 85 (1988) (outlining the trend among federal courts to implicate liberty interests in cases involving "specific charges of moral turpitude, criminal activity, or serious character defects," but not in cases involving "unelaborated charges relating to job performance"). *See Robertson v. Rogers*, 679 F.2d 1090, 1092 (4th Cir.1992) (holding that a superintendent's comments to prospective employers that plaintiff was terminated for "incompetence and outside activities" did not infringe on a protected liberty interest); *Bunting v. City of Columbia*, 639 F.2d 1090, 1094 (4th Cir.1981) (holding that no liberty interest was implicated where the public reason for employees' dismissal was that their services did not meet the expectations of the public employer).

The court finds that the public statements at issue in the present case are not of sufficient magnitude to impair McBride's standing in the community or to impose a stigma on him foreclosing his freedom to take advantage of other employment opportunities. *See Roth*, 408 U.S. at 573–75, 92 S.Ct. at 2707–08. The Authority publicly stated only that McBride's termination was based on "unsatisfactory job performance" and a "lack of compatibility." Federal courts have held uniformly that analogous public statements do not infringe upon liberty interests protected by the Due Process Clause of the Fourteenth Amendment. *See Quarles*, 366 S.E.2d at 85.

Finally, McBride argues strenuously that the public statement that "[t]here is no suggestion of unlawful conduct or other impropriety" means precisely the opposite of what it says. Had the Authority publicly stated that it did terminate McBride for unlawful conduct or impropriety, it well may have deprived McBride of a protected liberty interest. For reasons set forth with more detail in the court's discussion of the defamation claim, however, the court finds that plaintiff's argument lacks merit.

Since McBride has failed to rebut defendants' showing that they did not deprive plaintiff of a protected liberty interest, the court must grant summary judgment as to Count I (liberty interest claim).

### B. *Defamation Claim*

■ As a threshold matter, a portion of plaintiff's defamation claim is time-barred. To the extent that plaintiff's allegations concern statements or accusations "caused to be made and/or circulated" in the summer and fall of 1991, Virginia's one year statute of limitations bars him from bringing them in this action, filed on April 30, 1993. *See* Va. Code Ann. § 8.01–248; *Semida v. Rice*, 863 F.2d 1156, 1160 (4th Cir.1988) (recognizing that " '[t]he Virginia Supreme Court has consistently applied the one year statute of limitation ... to defamation actions' ").

The alleged defamation upon which plaintiff relies is the Authority's public statement announcing its termination of McBride and the reasons for its decision. The statement is set forth in full above. The court can find only two potential bases for a defamation claim: either the statement that McBride's termination was "based on unsatisfactory job performance," or the statement that "[t]here is no suggestion of unlawful conduct or other impropriety." The court sees no merit in a claim based on either statement.

■ First, a defamatory statement must be false. Truth is an absolute defense to an action for defamation, and the burden is on plaintiff to prove falsity. *Bills v. Sunshine Wireless Co.*, 824 F.Supp. 60, 64 (E.D.Va. 1993) (granting defendant's motion for summary judgment on plaintiff's defamation

claim where plaintiff failed to introduce any evidence to prove stated reasons for discharge were false); *Seabolt v. Westmoreland Coal Co.*, 703 F.Supp. 1235, 1242 (W.D.Va. 1989) (granting defendant's motion for summary judgment as to plaintiffs' defamation claim where none of the plaintiffs had met his burden of showing falsity in any material respect), *aff'd*, 898 F.2d 144 (4th Cir.), *cert. denied*, 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990). In addition, "[t]o be 'actionable,' the statement must be not only false, but also defamatory, that is, it must 'tend[ ] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Chapin v. Knight–Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir.1993) (quoting Restatement (Second) of Torts § 559).

■ Under the relevant Virginia law, the court must dismiss plaintiff's defamation claim as to the portion of the statement relating to unsatisfactory job performance. First, plaintiff has not presented the court with one shred of evidence establishing the statement's falsity. Even if plaintiff could meet his burden as to falsity, the statement simply is not defamatory. As discussed above with reference to plaintiff's liberty deprivation claim, allegations of unsatisfactory job performance do not in and of themselves so harm his reputation as to lower him in the estimation of the community or deter third persons from associating or dealing with him.[2] "Merely offensive or unpleasant statements are not defamatory." *Chapin*, 993 F.2d at 1092. The court finds that the statement at issue does not rise above mere offensiveness.

■ The court also must dismiss plaintiff's defamation claim as to the statement that "[t]here is no suggestion of unlawful conduct or other impropriety." Plaintiff obviously does not contend that this statement is false. Instead, plaintiff rests his argument on the assertion that this statement was a "back-handed" attempt to imply the opposite of what it says. Neither the court nor a

reasonable jury can attribute a defamatory connotation to an admittedly true statement absent an iota of evidence to that effect. If anything, the evidence shows that the statement was fully consistent with a rather gracious announcement of termination. The Board stated that it "appreciate[d] the contributions of Mr. McBride and t[ook] this action with regret." The sentence immediately following the alleged defamation stated that the Board based its decision on a "lack of compatibility." If anything, the statement evinced the Board's sensitivity to the potentially damaging effect such a declaration might have on plaintiff. The court finds that it could more readily impute a defamatory insinuation in the absence of such a statement, by negative implication.

For these reasons, the court finds that it must grant summary judgment as to Count III.

### C. *First Amendment Claim*

■ Plaintiff claims that he was discharged in retaliation for the exercise of his right under the First Amendment to freedom of speech. In *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Court addressed the tension inherent between a public employee's right to free speech and the governmental employer's right to act in a proprietary capacity. *Arvinger v. Mayor and City Counsel of Baltimore*, 862 F.2d 75, 77 (4th Cir.1988). In analyzing whether a public employer has violated an employee's right to free speech the court must engage in

> a balancing test between "the interests of the [employee], as a citizen, in commenting upon matters of public concern," and "the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." . . . A proper *Pickering* analysis asks first whether the speech in question involved a matter of public concern, and then whether that speech so disrupted the employer's functioning as to justify the

---

**2.** The court notes in passing that since his termination, McBride has worked part time at the

Charleston Housing Authority.

imposition on the speaker's first amendment rights.

*Arvinger,* 862 F.2d at 77 (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734–35).

 Plaintiff claims that defendants discharged him in retaliation for quotations attributed to him in two articles in the *Roanoke Times.* The court finds that both of the quotations at issue involved matters of public concern. The first quotation was in response to complaints about the condition of one of the properties managed by the authority (the "ceiling" comment). The second quotation involved the issue of poverty in Roanoke (the "banana" comment).

 Having found that plaintiff has satisfied the threshold requirements, the court proceeds to the *Pickering* balancing test.[3] In striking the balance, "the State's burden in justifying a particular discharge varies depending upon the nature of the employee's expression." *Connick v. Myers,* 461 U.S. 138, 150, 103 S.Ct. 1684, 1692, 75 L.Ed.2d 708 (1983). Thus, in *Dartland v. Metropolitan Dade County,* 760 F.Supp. 196, 200 (S.D.Fla. 1991), the court upheld the discharge of an employee who had called his supervisor a "lackey" in print. The court reasoned as follows:

> [The employee's] statement was not a simple statement of opinion. Rather, it was rude and insulting, and therefore, concerned elements of personal as well as public interest.... Under these circumstances, [his] First Amendment rights are outweighed by [the public employer's] interest in the working relationships of its employees and in performing its public services efficiently.

*Id.* See also *Pierson,* 799 F.Supp. at 601 (upholding a discharge in the face of a First Amendment challenge where the speech in question was a pattern of insubordination which " 'brought ill reflection upon the Housing Authority, the Board of Commissioners, and the Director' ").

The nature of the expression at issue in this case militates in favor of the Authority. Plaintiff's statements were insensitive at best. At deposition, McBride himself admitted that the quotation in the poverty article "appalled" him. Moreover, although he claimed that the article misquoted him, McBride never requested that the newspaper retract the statement. In light of McBride's position at the Authority, the statements were especially inappropriate. As chief spokesperson for the Authority, McBride knew that tactful relations with the press were especially important.

On the other side of the balance, the Board understandably prioritized the Authority's public relations. A perception of the individual charged with overseeing the daily operations of the Authority as insensitive to the plight of the poor unquestionably would hinder the efficiency of the public services it performs—providing housing to low income individuals. The court holds that the Authority's legitimate interest in maintaining a favorable public perception outweighs as a matter of law McBride's First Amendment interest in the statements at issue, which he himself regrets making. Accordingly, the court must grant summary judgment as to Count II.

### III. CONCLUSION

For the reasons stated, the court finds that it must grant defendants' motion for summary judgment. An appropriate order consistent with this memorandum opinion shall be entered this day.

---

**3.** The court harbors grave doubts as to whether plaintiff has met his burden to show that he would not have been discharged "but for" the exercise of his First Amendment rights. *See Pierson v. Housing Auth. of City of Grafton,* 799 F.Supp. 596, 599 (N.D.W.Va.1992) (holding that "[p]laintiff must come forth with sufficient facts to permit a determination that his statements were a substantial motivating factor in his employment termination"). Since defendants have chosen expressly not to brief this issue to the court at this time, the court will assume for the purposes of this motion that plaintiff has satisfied his burden in this regard.