Walter **DARTLAND**, Plaintiff,

v.

**METROPOLITAN DADE COUNTY, etc., Sergio Pereira, individually, and Bill Hampton, individually, Defendants.**

No. 86–2114–CIV.

United States District Court, S.D. Florida, Miami Division.

March 10, 1988.

Chonin & Sher, P.A., Coral Gables, Fla., for plaintiff.

Murray A. Greenberg, Lee Kraftchick, Asst. Co. Attys., Miami, Fla., for defendants.

### MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

SPELLMAN, District Judge.

THIS CAUSE comes before the Court upon Defendants' Renewed Motion for Summary Judgment. This is a civil rights action by former Dade County Consumer Advocate, Walter Dartland, seeking damages pursuant to 42 U.S.C. section 1983 for having been dismissed allegedly for exercising his first amendment right to free speech.

Plaintiff was employed as the Consumer Advocate of Defendant Dade County. Defendant Pereira was at that time serving in the position of County Manager. Dartland alleges that Pereira proposed the merger of the Consumer Advocate's Office into the Office of Consumer Protection. Dartland first learned of the proposal on or about July 10, 1986, when a Miami News reporter who had read of the proposed merger contacted him. On approximately September 8, 1986, a Miami Herald reporter interviewed Dartland by telephone regarding the proposed merger. Dartland referred to Pereira as a "paid lackey" who had a "total misconception" of what a consumer advocate does. Dartland further stated that if

the Dade County Commissioners agreed to the Manager's proposed merger, the result would be "not a government run by the people, but a government run by bureaucrats." These statements appeared the following day in an edition of the Miami Herald. The following day, September 10. 1986, Pereira called Dartland into his office. After Dartland confirmed having made the statements, Pereira asked him to resign. When Dartland refused to do so, Pereira fired him.

When Pereira was asked at his deposition why he had fired Dartland, he replied

> Well there is a basic thing called loyalty, in terms of the people that work for you, and the fact that obviously Mr. Dartland, by the kind of comments that he made to the newspaper, had a lack of confidence, if you will, and certainly a lack of loyalty to the person he is supposed to work for, and that, as far as I am concerned, was sufficient grounds to ask Mr. Dartland to resign.

> \* \* \* \* \* \*

> [L]et me make your job a little easier because I think that you are striving at the fact as to why Mr. Dartland was fired; regardless of my differences about what he did or did not do in terms of the Consumer Advocate, I did not expect anybody who called me a paid lackey in the paper to be working for me.

Deposition of Sergio Pereira at 13–14 & 32–33.

Approximately one month after his discharge, Dartland initiated this action. Within a week after the filing of this suit, Sheila Rushton, the County's Assistant Director of the Consumer Services Department, was assigned to review the pending files in the Consumer Advocate's Office. During the performance of this task, she discovered that Dartland had worked on a file which struck her as "curious" inasmuch as the facts surrounding the file suggested that Dartland's actions with respect thereto may have constituted a criminal conflict of interest. She brought the file to Defendant Bill Hampton, her supervisor, who after reviewing the file, brought it to Pereira's attention. The manager, in turn,

decided to turn the file over to the State Attorney for investigation. State Attorney Michael Washam, investigating the case, spoke to Dartland concerning the matter. Shortly thereafter, Washam closed the file, apparently convinced that the County's concerns were unsubstantiated.

This Court granted Dartland's Motion to File Supplemental Pleadings filed thereafter. The supplemental pleading is essentially a second count to the original complaint alleging that the actions of the County and its officials in instigating the investigation against him constituted a deprivation of Dartland's right to petition the courts for redress of grievances under the first and fourteenth amendments.

### Analysis

#### I. FIRST AMENDMENT VIOLATION

■ To determine whether a public employee is dismissed in violation of his first amendment rights, a Court must determine whether the public employer's decision to dismiss the employee was substantially motivated by the employee's exercise of speech within the scope of first amendment protection. *See Ferrara v. Mills*, 781 F.2d 1508, 1512 (11th Cir.1986). The Defendants do not contest that Pereira's decision to terminate Dartland's employment was hinged solely on Dartland's reported comments about Pereira.

■ Whether the speech at issue is within the scope of first amendment protection necessitates answering two questions: first, whether the speech pertained to issues of public concern rather than to matters of mere personal concern; second, whether the employee's first amendment interests were outweighed by the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Rankin v. McPherson*, —— U.S. ——, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

■ The Defendants concede that the subject matter of the speech at issue is of public importance. Accordingly, the only issue in this calculus that is contested is

whether the state's interest as an employer outweighs the employee's first amendment interests. To determine the extent of the State's interest as an employer in this context, a court may take several factors into account: whether the statements are directed toward any person with whom the employee would normally come into daily contact in his professional capacity; whether the statement interfered with maintaining "discipline by immediate superiors or harmony among coworkers"; and whether the employee and employer were involved in "the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning." *Pickering*, 391 U.S. at 569–70, 88 S.Ct. at 1735. Other cases suggest that the time, place, and manner of the statement are also to be considered in the balancing process *to the extent that they threaten the employing agency's institutional efficiency. Connick v. Myers*, 461 U.S. 138, 152–53, 103 S.Ct. 1684, 1693–94, 75 L.Ed.2d 708 (1983).

█ Amidst this plethora of factors and prongs, it is relatively easy to get lost. First amendment rights protect free debate and the free exchange of ideas, which we fundamentally believe is critical to the public interest. The public agency employee is in a unique situation, in that, through his office, he directly serves the public interest. Under certain circumstances, the employee's exercise of free speech can impede both his ability to perform his job and the efficient functioning of the office, to the detriment of the public interest. Hence, the need for the multitude of steps and factors in this analysis: to insure that a public employee's first amendment rights not be trumped unless the exercise of such right impairs to a greater extent than it furthers the public interest. This rationale should be kept in mind when assessing and weighing the various factors. This rationale supports the Supreme Court's admonition "that a stronger showing [of the public agency's interest as an employer] may be necessary if the employee's speech more substantially involved matters of public concern." *Connick*, 461 U.S. at 152, 103 S.Ct. at 1692–93.

In analyzing this Motion for Summary Judgment, it is clear that all inferences are to be drawn in favor of Dartland, the non-moving party. This is particularly true inasmuch as in making a *Pickering* analysis, "government efficiency interests should be closely examined, and summary judgment in such cases is often disapproved." *Foster v. Ripley*, 645 F.2d 1142, 1148 (D.C.Cir.1981).

█ Although the Defendants have conceded that the speech at issue in this case was of public concern, the Court is of the opinion that the speech may very well have been of *great* public concern. This is so inasmuch as it appears to have been uttered in response to the news of the potential demise of a County agency dedicated to defending consumer interests. Thus, the speech pertained to a matter that stood to impact significantly and directly upon the public. This is exactly the sort of matter as to which free debate and the exchange of ideas should be encouraged. Accordingly, the Defendant has a substantial burden to show that its interests as an employer outweighed Dartland's first amendment rights. *See Connick*, 461 U.S. at 152, 103 S.Ct. at 1692–93.

█ Whether the Defendants interest *qua* employer outweighs the individual's first amendment right is a question of law for this Court to resolve. *See Schneider v. City of Atlanta*, 628 F.2d 915, 919 & n. 4 (11th Cir.1980). Assessing the relative weights to the sides of the scale, however, may present several discrete determinations to be rendered by the finder of fact. Thus, in this case, unless the Defendants have conclusively demonstrated the existence of enough of these factors so as to require the Court to find, as a matter of law, that the balance tips in their favor, it is for the jury to determine whether and to what extent these factors exist in the present case. The Court is of the opinion that the Defendants have not carried their burden for the purposes of this Motion for summary judgment.

■ First, as to Pereira's relationship with Dartland: Defendants have not proffered a shred of evidence demonstrating that Dartland's statements were directed at someone with whom he would normally come into daily contact. Although in his deposition, Dartland acknowledged that he had had a fair amount of contact with those who preceded Pereira to the position of County Manager, he has offered testimony, including his own affidavit, that his contact with Pereira was minimal. Defendants seek to argue that several facts demonstrate the absence of a material issue as to the closeness of this relationship. Defendants contend that the facts that the Consumer Advocate was appointed by and served at the will of the County Manager,[1] and because he was ultimately accountable to the County Manager, demonstrated the closeness of their relationship. Certainly, this by itself would strip "at will" public employees of all significant first amendment protection. In fact, a reasonable reading of this assertion suggests that all nominal superiors should be immune from criticism by their subordinates.

Moreover, the Defendants have not convinced the Court that it is beyond dispute that the relationship was of the kind for which loyalty and confidence are necessary for the proper functioning of the individuals in their professional capacities. To the contrary, Dartland has carried his burden in convincing the Court that he has demonstrated the existence of several material issues of fact for resolution by the jury.

Significantly, the fact that the County and its Manager were contemplating the merger of Dartland's office, possibly threatening his employment, implies that the relationship between these two men may have been less thick than both blood and water. This is especially so in light of the manner in which Dartland learned of the merger proposal—by telephone from a news reporter. A jury ought to have an opportunity to decide whether a relationship seemingly devoid of such communicative niceties could have been significantly worsened by Dartland's statement, and whether such relationship could have been essential to the agency's efficient operations when, arguably, it never seems to have been terribly important to either party before the culprit statement was uttered and published.

Defendants point out that, although the Dade County Code grants the Consumer Advocate the "sole discretion to represent or refrain from representing the public interest in any proceeding," he was required to consider "the recommendations of the County Manager, the Board of County Commissioners, and the Director of the Consumer Protection Division" of the County. Dade County Code section 2–25.4. The Defendants have not suggested how, if at all, and to what extent, Dartland's speech might render him incapable of considering Pereira's recommendations. Indeed, Defendants have not impugned Dartland's judgment or ability to discern a good recommendation from an ill-advised one. If anything, this section emphasizes the extent to which Dartland was not dependent upon his relationship with Pereira to do his job. In any case, to the extent that this statute is ambiguous on the issue of the parties' need for a close working relationship, this is a dispute to be resolved by a jury.

■ Nor have the Defendants offered any evidence that the statements interfered with maintaining discipline by immediate superiors or harmony among coworkers. Pereira testified that the Dartland's statement destroyed whatever relationship existed between the two. Certainly, he would be in a better position than Dartland to make such an assessment. This fact, however, only is relevant to the extent that the relationship is necessary for the efficient functioning of the public agency and for the efficient effectuation of the employee's duties. A public employee does not lose first amendment protection merely because he alienates his superior. This approach would give the superior an absolute power of censorship. This "alienation" is only

1. The Court finds that, on the basis of these facts, the case at bar is clearly distinguishable from *City of St. Louis v. Praprotnik,* —— U.S. ——, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

relevant to the extent that it impedes the efficiency of the employee, the superior, or the agency. Thus, this fact does not persuade the Court that summary judgment should be entered in favor of the Defendants. The Defendants have misplaced their reliance in *Sprague v. Fitzpatrick*, 546 F.2d 560 (3d Cir.1976). In *Sprague*, the Third Circuit approved of the dismissal by a District Attorney of an Assistant District Attorney who had told the press that his superior had misrepresented to the court the facts of a pending case. That case involved a breach in the relationship between a public official *and his assistant* —necessarily a relationship of trust. Whether such a relationship existed under these facts is for a jury to determine.

Defendants assert that the time, place, and manner of Dartland's speech were far more egregious and disruptive than was necessary to communicate his ideas to Pereira. The Defendants seem to have attached significance to time, place and manner considerations above and beyond the extent to which these considerations impact on the public agency's efficiency and on the working relationship between the speaker and the agency. The Defendants' legal argument and characterization of the facts seem to suggest that an employee who chooses a public forum and uses insulting language in his statement, is *ipso facto*, entitled to lesser first amendment protection. This inappropriately imparts a punitive function to the *Pickering* balancing test. It is not significant of itself that Dartland aired his views in the newspaper and that he referred to Pereira as a "paid lackey." These factors may be considered by a jury in determining to what extent, if any, this contributed to the deterioration of an important working relationship and threatened the employing agency's institutional efficiency.

Defendants cite *Foster v. Ripley*, 645 F.2d 1142 (D.C.Cir.1981), for the proposition that a public statement necessarily entitles an employee to less first amendment protection than a private statement does. In *Foster*, the employee had revealed damaging information about the agency to one of the agency's premier customers. *Id.* at 1148. Such statements made it impossible for the employee to function effectively in his position. By contrast, Dartland's statements were not alleged to have impeded his ability to do his own job; nor has it been shown that he undermined the effectiveness of his own agency. A jury should be able to determine whether Dartland's statements were merely all the more insulting because of the time, place, and manner of their utterance, or whether the time, place, and manner of the statements actually threatened the employing agency's institutional efficiency. This is an important factor in the balancing process. The Court is of the opinion that Dartland has sufficiently controverted the Defendants' assertion as to the absence of a material issue of fact in this case. Summary judgment on this issue would be inappropriate.

## II. QUALIFIED IMMUNITY

Pereira must show that at the time he dismissed Dartland, his "conduct did not violate clearly established ... constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Moreover, "[o]n summary judgment, the [district] judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." *Id.* In determining whether the law was clearly established, a court should be careful not to test the rule of law at such a level of generality as to render unavailable the defense of qualified immunity. *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, the Court cannot frame its inquiry as whether it was clearly established, at the time of Dartland's dismissal, that it was unlawful to fire a public employee for speaking on a matter of public concern, when the employee's right was not outweighed by the employing agency's efficiency interest. This would defeat the immunity doctrine completely. The Defendants would have the Court frame the issue as follows: whether, at the time Pereira dismissed Dartland, it was clearly es-

tablished that a public official did not have a right to dismiss a subordinate by whom he had been publicly insulted. Conversely, to frame the issue so narrowly would render the defense available to all public officials except in those rare cases in which a precedential case existed which was "on all fours" factually with the case at bar.

The Court is of the opinion that, at the time of the dismissal, the law was clearly established that before dismissing a public employee because of his exercise of free speech, the acting official is entitled to qualified immunity if his decision is based on a legitimate attempt to balance the employer's interest in efficient government against the employee's right to free speech. It is also clear to the Court that the cases from the highest court of this land have emphasized time and again the fact that the right to dismiss an employee for the exercise of first amendment rights stems solely from the need for effective functioning of the public employer's enterprise. *See Rankin v. McPherson,* —— U.S. ——, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Connick v. Myers,* 461 U.S. 138, 152–53 (1983); *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). It was clear at the time of Dartland's discharge that, to the extent that a public employee's speech did not impact upon the effective functioning of the public employer's enterprise, and to the extent that this consideration did not enter into the dismissing official's decision to discharge the employee, the employee's first amendment rights will have been violated. From the evidence submitted to this Court incident to this Motion, it does not appear that Dartland's comment threatened government efficiency. Rather, it appears that Pereira may have fired Dartland merely because he was insulted, or merely because Dartland publicly crossed Pereira, without considering the effect that this speech would have on agency operations. It was all the more clear that Pereira had a duty to consider this matter in light of the Supreme Court's admonition that a public employer has to make a stronger showing that government efficiency interests are at stake when an employee is discharged for speech substantially involving matters of public concern, as was the case here.

It was certainly clear at the time that a public employer does not have the right to use his power of dismissal as a content-based tool of censorship. Just as Dartland was not protected as to matters of speech of a purely personal nature, it was clear that Dade County could not dismiss Dartland merely for having injured Pereira's personal feelings. Pereira and Dade County are not entitled to summary judgment on this matter.

### III. THE RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES

The second count of Dartland's complaint, which was added following Judge Nesbitt's Order Granting Leave to File an Amended Pleading alleges that Dartland's right to petition the government for redress of grievances was violated. The Defendants caused the State Attorney's office to investigate whether Dartland had acted improperly in the face of a conflict of interest. Dartland argues that the fact that this occurred shortly after Dartland filed the instant lawsuit raises a strong inference of retaliatory motive; that the Defendants intended to punish Dartland for exercising his right to petition.

Dartland does not allege, however, that he has been deprived of this right. Indeed, the continuing existence of this lawsuit conclusively demonstrates that Dartland's right to petition is alive and well. Dartland has in no way alleged how the institution of this investigation damaged him in any legally cognizable manner. If anything, it appears that this count may have been filed in retaliation for what struck Dartland as retaliatory on the part of the Defendants. Without a reasonable theory of recovery, such filings come dangerously close to amounting to a violation of Fed.R.Civ.P. 11. Accordingly, because Dartland has not alleged any damages attributable to this count, the second count of his pleading does not state a cause of action upon which

relief may be granted. Moreover, although Dartland has asked for damages for loss of reputation, he has not stated a cause of action in defamation. Therefore, Defendant Bill Hampton should be Dismissed from this action.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Defendants' Renewed Motion for Summary Judgment is DENIED except insofar as it pertains to Count II of Plaintiff Dartland's Supplemental Pleading, with respect to which it is GRANTED. Defendant Hampton is hereby DISMISSED as a Defendant in this action.