**Walter DARTLAND, Plaintiff,**

v.

**METROPOLITAN DADE COUNTY, a political subdivision of the State of Florida, Defendants.**

No. 86–2114–CIV.

United States District Court, S.D. Florida.

March 29, 1991.

See also 717 F.Supp. 1544.

———

Marilyn Sher, Coral Gables, Fla., for plaintiff.

Lee Kraftchick, Miami, Fla., for defendants.

FINDINGS OF FACTS AND CONCLUSIONS OF LAW

SPELLMAN, District Judge.

INTRODUCTION

This matter having come before the Court for non-jury trial, and the Court having duly considered the evidence and arguments presented and being otherwise duly advised, does hereby find as follows:

NATURE OF PROCEEDINGS

Plaintiff, Walter Dartland, brought this cause of action, pursuant to 42 U.S.C. §§ 1983 and 1988, against Defendants, Metropolitan Dade County ("Dade County") and Sergio Pereira, as County Manager. Dartland alleges that he was dismissed from employment with Dade County in violation of his First Amendment Rights.

Pereira previously filed a motion for summary judgment on the basis of qualified immunity. This Court denied Pereira's motion. *Dartland v. Metropolitan Dade County*, 681 F.Supp. 1539 (S.D.Fla.1988). Pereira appealed and the Court of Appeals for the Eleventh Circuit reversed this Court's Order denying summary judgment and remanded with instructions to enter summary judgment in favor of Pereira. *Dartland v. Metropolitan Dade County*, 866 F.2d 1321 (11th Cir.1989). The Court of Appeals reasoned that Pereira's discharge of Dartland did not clearly violate Dartland's First Amendment rights, and thus Pereira was entitled to qualified immunity.

FINDINGS OF FACT

In 1986, Dartland was employed by Dade County, as Dade County's Consumer Advocate. The County Manager at that time was Pereira. Pereira serves as Dade County's chief executive officer, and is responsible for the day to day administration of County affairs. Dade County has approximately fifty operating departments, including the Consumer Advocate's Office, all of which report to the County Manager.

The Consumer Advocate position was created by a Dade County Ordinance that

has been codified as § 2–25 of the Dade County Code. In relevant part, the Code provides:

Section 2–25.1 Dade County Consumer Advocate—Position Established: Appointment; Term; Exempt from Classified Service.

The position of Dade County Consumer Advocate is hereby created and established. The Consumer Advocate shall be appointed by and serve at the will of the County Manager.

The Consumer Advocate shall be a duly licensed practicing attorney of the State of Florida. The Consumer Advocate shall serve under the supervision of the County Manager and shall be exempt from the Classified Service.

\* \* \* \* \* \*

Section 2–25.4 Decision to Represent Particular Public Interest.

The Consumer Advocate shall have sole discretion to represent or refrain from representing the public interest in any proceeding. He shall consider in exercising his discretion the importance and the extent of the public interest involved, whether that interest would be adequately represented without his presence, and the recommendations of the County Manager, the Board of County Commissioners, and the Director of the Consumer Protection Division of Dade County, Florida.

As the Consumer Advocate, Dartland served under the direct supervision of the County Manager. He was appointed to the office by the Manager, his salary was set by the Manager, his raises were determined by the Manager, he met with the Manager approximately every six months individually and more often at regular department head meetings, he submitted monthly status reports to the Manager, his leaves of absence were approved by the Manager, and the budget for the Consumer Advocate Office was reviewed by the Manager.

The nature of the Consumer Advocate position required Dartland to exercise substantial discretion in determining what issues of consumer importance should be pursued. Despite his independence, however, he was still expected to be responsive to the policy choices of the County Manager. The County Code requires the Consumer Advocate to consider the recommendations of the County Manager, and more importantly, the Code gives the Manager the right to hire and fire the Consumer Advocate at will. The Manager's right to hire and fire the Consumer Advocate gave him the ultimate authority to determine how the office would be run.

Sometime in early 1986, County Manager Sergio Pereira began considering a proposal to merge the Consumer Advocate position into Dade County's Office of Consumer Protection. The first time Dartland learned of Pereira's proposal was in July 1986 when he was contacted by a newspaper reporter who had read about the proposed merger in Dade County's proposed operating budget for fiscal year 1986–87. At the time, Dartland was on leave from his position as Consumer Advocate in order to campaign for the position of State Attorney General. In his initial contact with the press, Dartland stated that he objected to Pereira's merger proposal, but made no personal attacks on Pereira himself. Dartland added, however, that it was his belief that Pereira's merger proposal was a "personal attack" on him. Pereira took no action against Dartland in response to these statements.

In September 1986, after Dartland had lost the Attorney General election, he returned from his leave of absence to resume his position as Consumer Advocate. Shortly after his return, according to Dartland, a reporter contacted him concerning the Manager's proposal to merge the Consumer Advocate's Office into Dade County's Office of Consumer Protection. According to the newspaper's account of the interview, Dartland told the reporter that the Manager was a "paid lackey" who had a "total misconception of what a consumer advocate does" and that if the Dade County Commission agreed to the Manager's proposed merger, the result would be "not a government run by the people, but a government run by bureaucrats."

Pereira read these statements in the following morning's paper. When he arrived at work, he asked his secretary if he had received any messages from Dartland, expecting that if Dartland had been misquoted or quoted out of context he would want to immediately resolve any misunderstanding. When he did not hear from Dartland, Pereira arranged a meeting for the following day.

At the meeting, Pereira asked Dartland whether he had actually made the remarks reported in the newspaper. Dartland admitted that he had and offered no explanation. According to Dartland, he did not have an opportunity to explain because Pereira was irate and would not let him speak. According to Pereira, Dartland was afforded an opportunity to explain—the very purpose of the meeting was to hear Dartland's explanation—but Dartland insisted that his specific statements were not important, he wanted instead to discuss the future role of the Consumer Advocate. Hearing no retraction or explanation, Pereira asked Dartland to resign. When Dartland refused, Pereira fired him.

Dartland filed this lawsuit approximately four weeks after his discharge. He has requested damages for the discharge, but does not seek reinstatement to his former position.

Dartland now contends that his remarks about Pereira were not meant to be derogatory. In calling Pereira a "paid lackey", he meant only that Pereira, like himself and all other County employees, were just paid servants who were required to follow the policies set by Dade County commission. The day after he made the statements, however, Dartland was quoted in the press as having conceded that he would have been "upset" if one of his employees called him a "lackey" in print. He explained that his "critical remarks" were made because he believed Pereira was about to do away with his office and that under such circumstances, "you don't fight with kid gloves." Dartland added that he would never compromise with Pereira on how the Consumer Advocate's Office should be run and he was not going to start doing things "Sergio's way."

At the trial of the case, Dartland sought to absolve himself of responsibility for the remark in question, having appeared in the news media as it did, by stating that the same had truly been taken out of context. The clear thought that Dartland attempted to convey in this assertion and in his testimony during the trial, was that in fact the remark regarding "paid lackey" was truly not in the context in which it appeared in the newspaper, and therefore, Pereira was totally unjustified in terminating him as a result of the same.

Although Dartland testified with regard to this fact, Dartland never sought to convey in any form or fashion to the public, or for that matter, to Pereira, that any different context was intended other than that which appeared in the newspaper. At no time did Dartland ever seek to have the remark retracted or ever assert in any form that the remark had been taken out of context. No effort was made either to seek a retraction from the newspaper in question by contacting the reporter or any of the reporter's superiors. Nor was any effort made by Dartland to convey any different impression than what was conveyed by the news media to the public generally, and to Pereira. It appears that such an effort would have been simple to achieve and certainly important to be made known first to the County Manager, but most importantly to those in the general public who were the recipients of such remark.

Dartland's testimony at trial came far too late to be of assistance in that regard.

## CONCLUSIONS OF LAW

In Pereira's appeal of this Court's original Order denying him qualified immunity, the Court of Appeals expressly declined to decide whether Dartland's First Amendment Rights were violated. The issue of qualified immunity restricted the Court of Appeals' inquiry to whether "a reasonable official in Pereira's place would necessarily know that the termination of Dartland under these circumstances violated Dartland's

constitutional rights." *Dartland,* 866 F.2d at 1324. Nevertheless, the Court of Appeals set forth principles that guide this Court with regard to Dartland's First Amendment claim against the remaining Defendant, Dade County.

The Court of Appeals noted that the Supreme Court has not established a bright line standard to determine when the State, as an employer, may terminate an employee for that employee's speech, but "has balanced the interest of the employee in commenting on matters of public concern [footnote omitted] against the interest of the employer in performing public services efficiently." *Dartland,* 866 F.2d at 1323 (citing *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811, 817 (1968)). Here, Dade County does not dispute that the topic of whether the Consumer Advocate's Office should be merged into the Office of Consumer Protection was a matter of public concern.

Once it is determined that an employee's speech relates to a matter of public concern, the Court must then balance "the interest of the [employee] as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35 (1968); *See also, Rankin v. McPherson,* 483 U.S. 378, 383–84, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987).

In its decision on Pereira's appeal, the Court of Appeals considered what factors should be considered in striking the *Pickering* balance in this case. The Court of Appeals stated,

> Although we assume for purposes of this appeal that Dartland's expression touches a matter of public importance, this assumption does not require us to give the speech the same weight we would give to a simple statement of opinion. '[T]he State's burden in justifying a particular discharge varies depending upon the nature of the employee's expression.' *Connick* [*v. Myers*], 461 U.S.

[138] 150, 103 S.Ct. [1684] 1692, 75 L.Ed.2d [708] 722 (1983). '[T]he manner, time, and place in which' the employee's expression was aired are relevant. *Id.,* 461 U.S. at 152–53, 103 S.Ct. at 1693, 75 L.Ed.2d at 723. The manner of Dartland's message was rude and insulting. Although Dartland possessed a constitutional interest in expressing his view on a matter of public importance, the insulting nature of his words gives his speech an element of personal as opposed to public interest.

On the other side of the scale is Pereira's need to maintain loyalty, discipline and good working relationships among those he supervises. *See Pickering,* 391 U.S. at 570–73, 88 S.Ct. at 1735–37, 20 L.Ed.2d at 820. Although Dartland worked somewhat independently, he served under the supervision of the County Manager. Dade County, Fla., Metropolitan Code of Dade County, art. IIIA, sec. 2–25.1. Dartland had broad discretion under the Dade County Code in representing the public interest, but the Code required him to consider the recommendations of the County Manager. *Id.* sec. 2–25.4. Perhaps most important, the Consumer Advocate is appointed by and serves at the will of the County Manager. *Id.* sec. 2–25.1. The power to fire with or without cause implies that the Consumer Advocate should be responsive to the policy choices of the County Manager. At the least, because the Consumer Advocate is an at-will employee, the County Manager has the absolute right to fire him if the Consumer Advocate refuses to carry out the County Manager's policies.

This Court believes the *Pickering* balance weighs more heavily in favor of Dade County, and therefore, concludes Dartland's First Amendment rights were not violated by his termination from employment with Dade County. Dartland testified at trial that, by his statement, he intended to describe the interrelationship of all Dade County employees with the County Commission; that is, that the Dade County employees were "paid servants" or "paid lackeys" who were required to follow the policies set by the County Commission. Further, Dartland testified that he had no opportunity to explain his statement to Per-

eira because Pereira was irate and would not let him speak when Pereira met, in his office, with Dartland regarding Dartland's statement.

The undersigned is unconvinced by these belated explanations. Dartland conceded, the day after his statement, that he would have been "upset" if one of his employees called him a "lackey" in print. Yet, Dartland never contacted any of the newspaper's employees to have his statement retracted, and instead indicated his refusal to follow Pereira's directions concerning the merger of the Consumer Advocate's Office with the Office of Consumer Protection.

Dartland's statement was not a simple statement of opinion. Rather, it was rude and insulting, and therefore, concerned elements of personal as well as public interest. Dartland's statement raised concerns of Pereira's continued ability to command the discipline, respect and loyalty of his subordinates. Under these circumstances, Dartland's First Amendment rights are outweighed by Dade County's interest in the working relationships of its employees, and in performing its public services efficiently.

Based on the foregoing, it is hereby

ORDERED AND ADJUDGED that this Court finds in favor of the Defendant and against the Plaintiff. Defendant shall file a proposed order of final judgment within ten (10) days from the date of this Order.

DONE AND ORDERED.