**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HERBERT D. MCBRIDE,
<u>Plaintiff-Appellant,</u>

v.

ROBERT W. GLENN, JR., individually
and in his official capacity as

No. 95-1143

Chairman of the City of Roanoke
Redevelopment and Housing
Authority; CITY OF ROANOKE
REDEVELOPMENT AND HOUSING
AUTHORITY,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-93-349)

Argued: December 6, 1995

Decided: March 5, 1996

Before WILKINSON, Chief Judge, and WILLIAMS, Circuit Judge,
and THORNBURG, United States District Judge for the Western
District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Broome Thorsen, THORSEN, PAGE & MAR-
CHANT, Richmond, Virginia, for Appellant. Clinton Stephen Morse,

WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, Virginia, for Appellees. **ON BRIEF:** Todd A. Leeson, WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Herbert D. McBride appeals the district court's grant of summary judgment to appellees, the Roanoke Redevelopment and Housing Authority and its Board Chairman Robert W. Glenn, Jr., on the ground that McBride's termination as Executive Director of the Authority did not infringe his constitutional or contractual rights. We affirm.

I.

This case arises out of the Authority's decision to discharge Herbert McBride in May, 1992. McBride was selected as the Executive Director of the Authority in 1981. Glenn assumed the Chairmanship of the Authority's Board in 1991.

Glenn and McBride had a strained relationship. In late October, 1991, Glenn wrote to McBride to outline performance deficiencies in McBride's management of the Authority, including that he was inaccessible, unresponsive, and failed to follow basic business practices. Glenn explained that considerable improvement in McBride's performance would be required, and that the Board would evaluate McBride's progress in the subsequent six months and "make a determination about [ ] future employment status at that time."

As part of his duties as Executive Director, in late February, 1992, McBride sought the Board's approval of a new personnel policy. That

2

policy noted that the procedures contained within it did not create an employment contract and stated that the employment relationship was "at will." McBride signed a form acknowledging the nature of the employment relationship.

As Executive Director, McBride served as spokesman for the Authority. In an October, 1990 newspaper article, McBride was quoted as saying that the ceiling of a resident's apartment was made of light-weight dry wall, thus apparently dismissing her concern that the ceiling might collapse. In another article in July, 1991, McBride was quoted as touting the Roanoke area as an agreeable place for poor people to live because they could always find something to eat at soup kitchens or in "the dumpsters--you might have to take one half of the banana and throw it away, but you can eat the other half."

As the six month evaluation period for McBride drew to a close, the Board met on May 2, 1992, and voted to dismiss McBride as Executive Director of the Authority. McBride refused an offer from the Board to resign. The Board then publicly announced its decision, stating that it was based on "unsatisfactory job performance" and a "lack of compatibility." McBride subsequently brought this action against the Authority and Glenn. The district court granted summary judgment to the defendants. McBride now appeals.

II.

A.

McBride first claims that the Board's decision to terminate him deprived him of a protected property interest without due process of law and breached his contract rights. As the district court found, however, McBride was an at will employee. McBride v. City of Roanoke, 871 F. Supp. 885, 890 (W.D. Va. 1994). McBride acknowledged as much by signing a certification that stated: "I understand that my employment is mutually terminable at will, with or without notice or stated reason . . ." Such an acknowledgment is sufficient under Virginia law to create an at will employment relationship. Progress Printing Co., Inc. v. Nichols, 421 S.E.2d 428, 431 (Va. 1992). As an at will employee, McBride did not have a property interest in his job under state law and thus could not invoke the requirements of proce-

3

dural due process. Board of Regents v. Roth, 408 U.S. 564, 569 (1972); Jenkins v. Weatherholtz, 909 F.2d 105, 107 (4th Cir. 1990). Nor could he assert a claim for breach of contract. Progress Printing, 421 S.E.2d at 431.

McBride's attempt to invoke the protections of the state's grievance procedure is unavailing. First, McBride cannot complain that he was denied the protections of the grievance procedure when he never attempted to invoke them. Second, the district court found that the Authority offered unrefuted evidence that McBride was exempt from that procedure as an "[a]gency head[ ] or chief executive officer[ ] of government operations . . . appointed by boards and commissions." Va.Code § 2.1-114:5:1(C)(1)(b).

B.

McBride next alleges that the Board's decision to discharge him infringed a liberty interest without due process of law. When the Board terminated McBride, however, it stated that there was "no suggestion of unlawful conduct or other impropriety." It explained that its decision rested on "unsatisfactory job performance" and "lack of compatibility." This statement did not impose a stigma on McBride. Roth, 408 U.S. at 573-74. McBride's dismissal consequently did not cause the sort of reputational injury that may constitute an infringement of a liberty interest. See Id. at 575; Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir. 1982) (termination for "incompetence and outside activities" does not infringe a liberty interest).

C.

McBride finally contends that the Board improperly terminated him because of the statements attributed to him in the Roanoke newspaper, which he claims were an exercise of his First Amendment rights. But even assuming that the statements attributed to McBride played a role in his discharge, and that they related to matters of public concern, Connick v. Myers, 461 U.S. 138, 143-46 (1983), the statements were insensitive, to say the least, for the Executive Director of a low-income housing authority. McBride himself admitted he was "appalled" by them. The Authority's interest in the "effective and efficient fulfillment of its responsibilities to the public," id. at 150, cer-

4

tainly outweighed any interest McBride might have had in making these statements.

III.

We affirm for the reasons stated by the district court in its careful opinion.

<u>AFFIRMED</u>

5